**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 11:00 AM October 29, 2014**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| NORMAN AUSTIN TANNER AND | ) | CASE NO. 06-61245 |
| JUNE ANN TANNER, | ) | |
| | ) | ADV. NO. 14-6002 |
| Debtors. | ) | |
| _____ | ) | JUDGE RUSS KENDIG |
| NORMAN AUSTIN TANNER AND | ) | |
| JUNE ANN TANNER, | ) | |
| | ) | |
| Plaintiffs, | ) | **MEMORANDUM OF OPINION** |
| v. | ) | **(NOT FOR PUBLICATION)** |
| | ) | |
| DAVID TANNER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Debtor-plaintiffs ("Debtors") commenced this proceeding to enjoin the actions by defendants to collect a debt Debtors allege was discharged in their 2006 bankruptcy case. Relying on 11 U.S.C. § 524, Debtors also seek a monetary judgment. Defendants argue that the debt is a post-petition debt and therefore not covered by the discharge. The court conducted a trial on September 8, 2014.

The court has jurisdiction of this proceeding under 28 U.S.C. § 1334 and the general

1

order of reference entered in this district on April 4, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2). In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. The following constitutes the court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

## FACTS

Around 1990, Debtors opened a business at Atwood Lake and by 2000, the business was in financial trouble. In 2001, the Debtors obtained a loan from Debtor Norman Tanner's parents, David Austin Tanner ("Father") and Margaret Tanner ("Mother") (collectively "Parents"). Parents borrowed $63,000, secured with a mortgage on their home, and Debtors agreed to make payments on the mortgage. There was no written agreement.

Parents refinanced the mortgage in 2003. Under the refinance, the principal amount borrowed was $63,855.00 and the interest rate was 5.375% for a thirty year term. The monthly payments were $357.57.[1] Debtors continued making payments on the refinanced loan.

Debtors' financial difficulties continued and they filed a chapter 7 bankruptcy case in 2006. Parents were listed as unsecured creditors on Schedule F with a debt in the amount of $61,399.00. Debtors obtained a discharge on November 15, 2006. The debt to Parents was not reaffirmed. Debtors continued to make the mortgage payments after the bankruptcy until stopping on or about January 2014.

Defendant Betty London is Norman Tanner's sister ("Sister"). At some point after the 2001 loan between Debtors and Parents was made, she moved back to Ohio from New York and lived with and cared for Parents until their decease. She was also power of attorney for Parents. In 2012, she used her power of attorney to refinance the mortgage note. The refinance was in the amount of $55,500.00 at an annual rate of 4.24% for a fifteen year term. The payments increased to $417.30.[2] No one received any cash from the refinance and Sister paid approximately $900.00 from her personal checking account for the closing costs.

In June 2013, Parents and Sister ("Defendants") filed a complaint in the Carroll County Common Pleas Court seeking to force Debtors to continue making payments. All parties consider Parents' home to be Sister's inheritance and Parents' wills were changed accordingly, noting the loan made to Debtors. Unfortunately, since the home is not free and clear as a result of the mortgage loan taken for Debtors' benefit, Sister drew the short inheritance straw. Parents are now deceased.[3] Mother died in December 2013 and Father died in March 2014.

## DISCUSSION

Debtors' obligation to Parents was an unsecured liability discharged in their 2006

---

1 Escrow is not included in this figure.
2 Escrow is not included in this figure.
3 For this reason, hereinafter the court will treat Sister as the sole defendant.

2

bankruptcy. This is not in dispute. Sister argues that the 2012 refinance is a new obligation. The court disagrees. "To create an enforceable post-petition agreement, the parties must prove the essential elements of a contract: 'offer, acceptance, contractual capacity, consideration . . ., a manifestation of mutual assent and legality of object and of consideration.'" In re Martin, 2012 WL 907090 (B.A.P. 6th Cir. 2012) (citing In re Martin, Case No. 09-13675, * 7 (Bankr. N.D. Ohio March 16, 2011)). The consideration must be "entirely independent" of the discharged debt. Rajotte v. Carter (In re Rajotte), 81 Fed.App'x 29, 32 (6th Cir. 2003). There was no consideration independent of the discharged debt involved with the 2013 refinance, thereby defeating Sister's claim that she is collecting a postpetition debt.

Sister testified that she refinanced the mortgage loan at Debtor June Tanner's appeal for a lower payment. The court finds this implausible because the monthly principal payment actually *increased* by approximately $50.00. The lower interest rate allowed Sister to reduce the term of the loan by several years. The court is persuaded that the refinance resulted from Sister's foresight as to her predicament. Debtor Norman Tanner's testimony that he intended to pay on this loan only as long as his parents were alive was wholly convincing and consistent with what happened. Evidently, any moral obligation did not extend to Sister.[4] Sister obviously recognized her dilemma because she filed the state court lawsuit in 2013, before either of her parents had passed and Debtors' payments on the note had stopped.

Based on the above, the court is convinced that Sister's motives in refinancing were not altruistic and not undertaken for the benefit of Debtors. In addition to a failure of consideration, this also evinces a lack of mutual assent. There is inadequate proof of any required element. Sister's feelings are understandable but her legal position is profoundly dreadful. There were attempts to paste together implausible constructions such as "while getting the mail" but the parties had so little personal contact that there wasn't enough thread for plausible tale. The explanations were insufficient and lacking in credibility. Debtors' actions were pointless, as they consumed the equity from Parents' house and still wound up filing bankruptcy. Sister's inheritance was poured down the drain, but the statute has no exception for galling foolishness. Consequently, the court concludes the parties did not create a postpetition obligation and the state court lawsuit therefore involves the debt discharged in the 2006 bankruptcy. The court must therefore determine whether Sister's actions violate the discharge injunction of 11 U.S.C. § 524(a)(2).

To prove a violation of the discharge injunction, Debtors must show that Sister's actions were willful in that the actions "(1) violated the discharge injunction and (2) did so with actual knowledge of the injunction." In re Campbell, 2014 WL 32161, * 6 (Bankr. E.D. Ky. 2014) (citing Gunter v. O'Brien & Assocs. Co. LPA (In re Gunter), 389 B.R. 75, 72 (Bankr. S.D. Ohio 2008) (citing Liberte Capital Grp., LLC v. Capwill, 462 F.3d 543, 550 (6th Cir. 2006)). Debtors must demonstrate the violation by clear and convincing evidence. Martin, 2012 WL 907090 at * 6 (citing Glover v. Johnson, 138 F.3d 229, 244 (6th Cir. 1998)). There is no question that the

---

4 In fact, his moral obligation appears to have only extended to Mother because he stopped making payments the month after her death and before Father passed. The testimony was clear that his close relationship was solely with his mother.

filing of the lawsuit in 2013 was an attempt to collect the discharged debt and is a breach of the discharge injunction.  The court also finds that the second element is satisfied.  Parents received notice of the bankruptcy in 2006, so any attempt to collect the debt on their behalf was done with knowledge of the bankruptcy case.  As for Sister, she testified that she learned of the bankruptcy after the refinance occurred but it is not clear whether she learned of the bankruptcy before she filed the state court lawsuit.  The record shows that Debtors' answer to the state court provides notice of the bankruptcy discharge.  The answer was filed on July 16, 2013.  The court finds that, as of this date, Sister had actual knowledge of the discharge injunction.  Debtors have demonstrated a violation of the discharge injunction for actions undertaken by Sister after this date by clear and convincing evidence.

Section 524(a)(2) does not provide a remedy for violations but courts traditionally find a remedial basis in contempt actions and § 105 of the Bankruptcy Code.  Pertuso v. Ford Motor Credit Co., 233 F.3d 417 (6th Cir. 2000).  To recover damages, Debtors must suffer actual injury.  Martin at * 5 (citing Paul v. Iglehart (In re Paul), 534 F.3d 1303, 1306 (10th Cir. 2008); Gunter, 389 B.R. at 72).  Debtors bear the burden of proof of damages by a preponderance of the evidence.  Martin at * 5 (citing McCool v. Beneficial (In re McCool), 446 B.R. 819, 823-24 (Bankr. N.D. Ohio 2010)).  Debtors have shown actual damages in the incurrence of legal fees, lost wages and travel expenses.

Attorney Jennifer Thomas testified that she represented Debtors in defending the state court action for a total of $1,401.60.  Upon review of the invoice, the court cannot determine which services occurred after July 16, 2013.  Any services provided after this date are compensable.  Additionally, Debtor Norman Tanner testified that he has lost four days wages, totaling $1,680.00, as a result of the lawsuit and also incurred mileage expenses travelling to the Carroll County Court of Common Pleas, this court and a deposition in Canton.  Any travel related to this case and the Carroll County action incurred after July 16, 2013 is compensable at fifty-six cents ($.56) per mile, the standard mileage rate issued by the Internal Revenue Service, as are wages lost after July 16, 2013.  Finally, Plaintiffs' attorneys should present any charges for presenting this action.

An order will be entered immediately.

#     #     #


**Service List:**

Michael V Repella
Law Office of Michael V. Repella II
26 Second St. SE
Carrollton, OH 44615Mansfield, OH 44901-0486

Phillip D Schandel
116 Cleveland Ave, N.W.
Courtyard Centre
#709
Canton, OH 44702

June Ann Tanner
Norman Austin Tanner
PO Box 136
#8 S. Ohio Street
Dellroy, OH 44620

Betty London
PO Box 291
Dellroy, OH 44620